RECEIVED
JUN 1 - 2018
AT 8:30_____M
WILLIAM T. WALSH, CLERK

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 18- 333 (MCA) |
| | : | |
| | : | 16 U.S.C. §§ 3372(a)(2)(A), (a)(4), and |
| v. | : | 3373(d)(1)(B) and 3373(d)(3)(A) |
| | : | 18 U.S.C. § 371 |
| JIN KIM | : | 18 U.S.C. § 554 |
| a/k/a "CHICAGO KIM" | : | 18 U.S.C. § 2 |
| | : | |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges at all times relevant to this Indictment:

## INTRODUCTION

### Background

1.  The American eel (*Anguilla rostrata*) was a species of fish native to the United States. The American eel was considered a "catadromous" species, which meant it reproduced in salt water systems and matured in fresh water (riverine) systems. American eel eggs typically hatched in the Sargasso Sea near the Bahamas and Bermuda, after which ocean currents carried the juvenile eels along the eastern North American coast. When they approached land, tidal fluctuations washed them into bays and tidal creeks, and the eels were drawn into freshwater river systems along the coastline, after which they began to migrate upstream. It was at this juvenile stage, during which the eel measured approximately two to three inches in length and was transparent, that the eel was referred to as an "elver" or a "glass eel." Once an elver matured

into a "silver eel," which had dark pigmentation, it would return to the sea in order to spawn.

2. The commercial market for American eels in the United States was concentrated on their juvenile "elver" stage. Elvers were worth many times more than adult eels, and fetched the highest prices when exported live to Hong Kong, Japan, Korea, and other East Asian countries. There, they were raised in captivity to adulthood and sold for sushi and other foods. In the United States, dealers paid as much as $2,000 per pound for live elvers destined for export.

3. South Carolina and Maine were the only states that allowed commercial harvest of elvers and elver fishing and commerce was heavily regulated in both of those states. Florida allowed commercial fishing of adult eels, through which fishermen could legally harvest elvers. Elvers are rare in Florida waters due to their migration patterns and state restrictions on harvest equipment made harvesting elvers there impractical.

4. Defendant JIN KIM, a/k/a "Chicago," (hereinafter, "defendant JIN KIM") was a resident of in or around Chicago, Illinois.

5. An individual referred to herein as "Co-Conspirator M.S." was a resident of in or around Woolwich, Maine.

6. An individual referred to herein as "Co-Conspirator R.B." was a resident of in or around Hyannis, Massachusetts.

7. An individual referred to herein as "Co-Conspirator R.A." was a resident of in or around Waldoboro, Maine.

8. An individual referred to herein as "Co-Conspirator J.G." was a resident of in or around Waldoboro, Maine.

## Relevant Statutes and Regulations

9. The Lacey Act, Title 16, United States Code, Section 3371 *et seq.*, made it unlawful for any person to knowingly engage, and attempt to engage, in conduct involving the transport, sell, receive, acquire, or purchase in interstate commerce any fish or wildlife, when the person knew that the wildlife had been taken, possessed, transported, and sold in violation of, and in a manner unlawful under, a wildlife-related law or regulation of a state. *See* 16 U.S.C. §§ 3372(a)(2)(A),(a)(4), and 3373(d)(1)(B).

10. New Jersey Administrative Code, Title 7, Chapter 25, Subchapter 18.1, prohibited the purchase, sale, offer for sale, or exposure for sale of American Eels less than nine inches in length. Any commercially licensed person was presumed to possess such species for sale purposes.

11. Massachusetts General Law, Chapter 130, Section 100D, and Chapter 131, Section 52A, established a six-inch minimum size limit for catching American eels.

12. Title 4, Virginia Administrative Code, 20-500-40, prohibited possession of elvers. Title 4, Virginia Administrative Code, 20-500-35, made it unlawful for any individual to take, catch, possess, or land any eels less than nine inches in length.

13. North Carolina Administrative Code Title 15A, subchapter 3M, Section 0510(1), prohibited the possession, sale, or take of eels less than six inches in length.

14. South Carolina Code of Laws, Sections 50-9-410, 50-9-420, 50-9-545, 50-5-1500, and 50-5-1555, and South Carolina Code of State Regulations, Chapter 123-33, authorized the South Carolina Department of Natural Resources (SCDNR) to regulate the harvest of American eels. The SCDNR restricted fishing for American eels to permitted harvesters and limited the harvest area to the Cooper River.

## COUNT ONE
## (Conspiracy to Violate the Lacey Act)

15. Paragraphs 1 through 14 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

### Objects of the Conspiracy

16. The objects of the conspiracy were to purchase elvers harvested in violation of state law, to sell and export elvers for profit, and to fraudulently disguise the origins of those elvers in order to deceive regulatory entities of the United States at the time of export.

17. From in or about March 2012 through in or about April 2014, in the District of New Jersey, and elsewhere, defendant

**JIN KIM**
**a/k/a "CHICAGO KIM"**

(hereinafter, the "Defendant Kim") knowingly and intentionally conspired and agreed with Co-Conspirator M.S., Co-Conspirator R.B., Co-Conspirator R.A., Co-Conspirator J.G., and others, to commit the following offenses:

    a.    to knowingly engage in conduct involving the sale and purchase of fish, namely American eels, with a market value in excess of $350, by transporting, selling, receiving, acquiring, and purchasing the fish, knowing the fish to have been taken, possessed, transported, and sold in violation of, and in a manner unlawful under, the laws and regulations of the state of New Jersey, specifically New Jersey Administrative Code, Title 7, Chapter 25, Subchapter 18.1; the laws and regulations of the state of Massachusetts, specifically, Massachusetts General Law, Chapter 130, Section 100D, and Chapter 131, Section 52A; the laws and regulations of the state of Virginia, specifically, Title 4, Virginia Administrative Code, 20-500-40 and 20-500-35; the laws and regulations of the state of North Carolina, specifically, North Carolina Administrative Code Title 15A, subchapter 3M, Section 0510(1); and the laws and regulations of the state of South Carolina, specifically, South Carolina Code of Laws, Sections 50-9-410, 50-9-420, 50-9-545, and 50-5-1555, and South Carolina Code of State Regulations,

Chapter 123-33, contrary to Title 16 United States Code, Sections 3372(a)(1) and 3373(d)(1)(B);

b.  to knowingly make and submit, and cause to be made and submitted, false records and false identifications of American eels that were, or were intended to be, transported in interstate commerce and exported, contrary to Title 16 United States Code, Sections 3372(d)(2) and 3373(d)(3)(A).

c.  to fraudulently and knowingly receive, buy, and sell, and facilitate the transportation and sale of, American eels prior to exportation, knowing them to be intended for exportation contrary to Title 16 United States Code, Sections 3372(a)(1), 3372(d)(2), and 3373(d)(1), and Title 50, Code of Federal Regulations, Section 14.63, contrary to Title 18, United States Code, Section 554.

## Manner and Means of the Conspiracy

18. It was a part of the conspiracy that Co-Conspirator M.S., Co-Conspirator R.B., Co-Conspirator R.A., Co-Conspirator J.G., and others, fished for and caught elvers in New Jersey, Massachusetts, Virginia, North Carolina, and elsewhere.

19. It was further a part of the conspiracy that defendant JIN KIM agreed to purchase, and did purchase, elvers that Co-Conspirator M.S., Co-Conspirator R.B., Co-Conspirator R.A., Co-Conspirator J.G., and others, caught in violation of state law.

6

20. It was further part of the conspiracy that Defendant JIN KIM obtained an eel harvest license from the State of Florida to present to dealers, exporters, and the United States Fish and Wildlife Service at the time of export from the United States, in order to falsely claim that Defendant JIN KIM had legally harvested the elvers in Florida waters.

21. It was further a part of the conspiracy that defendant JIN KIM transported elvers harvested in violation of state law in interstate commerce to airports and exported those elvers from the United States to buyers in Asia.

22. It was further a part of the conspiracy that defendant JIN KIM transported and sold elvers harvested in violation of state law in interstate commerce to fish dealers for export from the United States to buyers in Asia.

23. It was further a part of the conspiracy that defendant JIN KIM trafficked in over $500,000 worth of American eels obtained in violation of the laws and regulations of multiple states.

**Overt Acts**

24. In furtherance of the conspiracy and to effect the unlawful objects thereof, the following overt acts, among others, were committed in the District of New Jersey and elsewhere:

25. OVERT ACT ONE: On or about March 4, 2012, defendant JIN KIM exported American eels from the United States and submitted false harvest records that claimed he had received American eels from individuals referred to herein as "H.W.," "M.W.," and "J.J.," when in fact he had not.

26. OVERT ACT TWO: Between on or about March 20, 2012, and on or about March 23, 2012, defendant JIN KIM purchased American eels harvested in violation of state law from Co-conspirator R.B. and Co-conspirator M.S.

27. OVERT ACT THREE: Between on or about March 28, 2012 and on or about March 29, 2012, defendant JIN KIM purchased American eels harvested in violation of state law from Co-conspirator R.B. and Co-Conspirator M.S.

28. OVERT ACT FOUR: On or about March 30, 2012, defendant JIN KIM exported American eels from the United States, and submitted false harvest records that claimed he had received American eels from individuals referred to herein as "Ra.B.," "Ro.B.," "G.G.," "J.M.," and "M.P.," when in fact he had not.

29. OVERT ACT FIVE: On or about March 30, 2012, defendant JIN KIM exported a second shipment of American eels from the United States and submitted false harvest records that claimed he had received American eels from individuals referred to herein as "K.S.," "F.S.," "P.D.," and "D.S.," when in fact he had not.

30. OVERT ACT SIX: On or about April 12, 2012, defendant JIN KIM purchased illegally harvested American eels from Co-Conspirator R.B. and Co-Conspirator M.S.

31. OVERT ACT SEVEN: On or about April 17, 2012, Defendant JIN KIM exported American eels from the United States and submitted false harvest records that claimed he had received American eels from K.S., F.S., and an individual referred to herein as "E.S.," when in fact he had not.

32. OVERT ACT EIGHT: On or about February 9, 2013, Defendant JIN KIM purchased American eels from an undercover law enforcement agent posing as an illegal elver harvester, believing that they had been harvested illegally in or around Sunset Beach, North Carolina.

33. OVERT ACT NINE: On or about February 16, 2013, defendant JIN KIM purchased American eels from an undercover law enforcement agent posing as an illegal elver harvester, believing that the eels had been harvested illegally in or around Smithfield, Virginia.

34. OVERT ACT TEN: On or about February 25, 2013, defendant JIN KIM purchased American eels from an undercover law enforcement agent posing as an illegal elver harvester, believing that the eels had been harvested illegally in or around Smithfield, Virginia.

35. OVERT ACT ELEVEN: On or about March 7, 2013, defendant JIN KIM exported American eels from the United States, and submitted false harvest records that claimed defendant JIN KIM had harvested eels in Florida and South Carolina, when in fact he had not.

36. OVERT ACT TWELVE: On or about March 24, 2014, defendant JIN KIM told an undercover law enforcement agent, posing as an illegal elver

harvester, that the state of Florida would issue eel licenses, which could be used to launder illegal eels.

37. OVERT ACT THIRTEEN: Between on or about April 17, 2014, and on or about April 18, 2014, defendant JIN KIM purchased illegally harvested American eels from Co-conspirator R.A.

38. OVERT ACT FOURTEEN: On or about April 18, 2014, defendant JIN KIM transported illegally harvested American eels to an exporter in or around Totowa, New Jersey.

39. OVERT ACT FIFTEEN: On or about April 23, 2014, defendant JIN KIM purchased illegally harvested American eels from Co-conspirator "R.A." and Co-conspirator "J.G."

40. OVERT ACT SIXTEEN: On or about April 23, 2014, defendant JIN KIM transported illegally harvested American eels to an exporter in or around Totowa, New Jersey.

### COUNTS TWO AND THREE
### (Violations of the Lacey Act)

41. Paragraphs 1 through 14, and 18 through 40, of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

42. On or about the dates specified in the table below, defendant JIN KIM knowingly engaged, and attempted to engage in, conduct involving the purchase and sale of fish, namely, American eels, with a market value in excess of $350, by knowingly receiving, acquiring, selling, and transporting, and attempting to receive, acquire, purchase, and transport, such fish in interstate and foreign commerce, knowing such fish were taken, possessed,

and transported in violation of, and in a manner unlawful under, the laws and regulations of a state, when such fish were, in fact, or were attempted to be, taken, possessed, transported and sold in violation of the laws and regulations of the states specified in the table below:

| Count | Date (on or about) | State Law Violated | Place of Transport or Sale (in or around) |
|---|---|---|---|
| 2 | April 17, 2014 | Massachusetts General Law, Chapter 130, Section 100D, and Chapter 131, Section 52A | Totowa, New Jersey |
| 3 | April 23, 2014 | Massachusetts General Law, Chapter 130, Section 100D, and Chapter 131, Section 52A | Totowa, New Jersey |

In violation of Title 16, United States Code, Sections 3372(a)(2)(A), 3372(a)(4), and 3373(d)(1)(B), and Title 18, United States Code, Section 2.

## COUNTS FOUR AND FIVE
## (Smuggling)

26. Paragraphs 1 through 14, and 18 through 40, of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

27. On or about the dates specified in the table below, defendant JIN KIM, did fraudulently and knowingly receive, buy, and sell, and facilitate the transportation and sale of, American eels, prior to exportation, knowing the eels to be intended for exportation contrary to a law or regulation of the United States, specifically Title 16, United States Code, Sections 3372(a)(1) and 3372(d)(2), and Title 50, Code of Federal Regulations, Section 14.63.

| Count | Date (on or about) | Place of Transport or Sale (in or around) |
|---|---|---|
| 4 | April 17, 2014 | Totowa, New Jersey |
| 5 | April 23, 2014 | Totowa, New Jersey |

12

In violation of Title 18, United States Code, Section 554, and Title 18, United States Code, Section 2.

A TRUE BILL



JEFFREY H. WOOD
ACTING ASSISTANT ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCES DIVISION

By: _____

Shane N. Waller
Trial Attorney
U.S. Department of Justice
Environmental Crimes Section

CASE NUMBER: 18-333 (MCA)

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

JIN KIM, a/k/a "Chicago Kim"

# INDICTMENT FOR

16 U.S.C. §§ 3372 and 3373
18 U.S.C. § 371
18 U.S.C. § 554
18 U.S.C. § 2

A True Bill,



Fo

**JEFFREY H. WOOD**
*ACTING ASSISTANT ATTORNEY GENERAL*
*U.S. DEPARTMENT OF JUSTICE*
*ENVIRONMENT AND NATURAL RESOURCES DIVISION*

SHANE WALLER
*TRIAL ATTORNEY*
(202) 305-0362

USA-48AD 8
(Ed. 1/97)